FILED
U.S. DISTRICT COURT
AUGUSTA DIV.
2008 MAY 30 AM 9:46
CLERK_____
SO. DIST. OF GA.

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

DUBLIN DIVISION

| | |
|---|---|
| HERRACIAL GUNN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CV 307-079 |
| ) | |
| DON JARRIEL, et al., ) | |
| ) | |
| Defendants. ) | |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff, an inmate incarcerated at Bostick State Prison located in Hardwick, Georgia, commenced the above-captioned case pursuant to 42 U.S.C. § 1983. Plaintiff is proceeding *pro se* and *in forma pauperis* ("IFP"). Because Plaintiff's complaint was filed IFP, it must be screened to protect potential Defendants.[1] Phillips v. Mashburn, 746 F.2d 782, 785 (11th Cir. 1984). Pleadings drafted by *pro se* litigants must be liberally construed, Haines v. Kerner, 404 U.S. 519, 520-21 (1972) *(per curiam)*, but the Court may dismiss a complaint, or any part thereof, that is frivolous or malicious or that fails to state a claim upon which relief may be granted. 28 U.S.C. §§ 1915(e) & 1915A.

---

[1] On November 29, 2007, Plaintiff filed a motion amend. (Doc. no. 6). Finding Plaintiff's motion to amend moot, the Court directed, on December 14, 2007, Plaintiff to file an amended complaint in accordance with the instructions contained in that Order. (Doc. no. 8). Thereafter, Plaintiff filed another motion to amend. (Doc. no. 9). Again, the Court found Plaintiff's renewed motion to amend moot and directed Plaintiff to file an amended complaint in accordance with the instructions contained in the Court's December 14, 2007 Order. (Doc. no. 10). Subsequently, Plaintiff sent a letter to the Clerk of the Court, indicating that he wanted the Court to screen his original complaint. (Doc. no. 11). Therefore, the Court will now screen Plaintiff's original complaint.

# I. BACKGROUND

*Liberally* construing Plaintiff's complaint, the Court finds the following. Plaintiff names the following Defendants: (1) Don Jarriel, Warden, Dodge State Prison ("DSP"); (2) David McNeal, Deputy Warden of Security, DSP; (3) Tina Sanders, Deputy Warden of Care and Treatment, DSP; (4) Tonya Kemp, Medical College of Georgia ("MCG"); (5) Sharon Gay, Nurse, MCG; and (6) Ms. Anderson, Mailroom Officer, DSP. (Doc. no. 1, pp. 1, 4-6 & 8). Plaintiff submits that Defendant Anderson tampered with his mail, that Defendants Kemp and Gay exhibited deliberate indifference to his serious medical needs, that Defendants Jarriel and Sanders failed to respond to his letters, and that Defendant McNeal retaliated against him for exercising his rights. (See id. at 8).

Plaintiff alleges that, on November 16, 2005, he underwent surgery at Taylor Region Hospital ("TRH") to repair his injured right shoulder. (See id. at 5). Plaintiff contends that, after he was transferred to DSP, he began to file grievances related to his medical treatment, which were denied due to lack of proof. (Id. at 5-6). Plaintiff maintains that, on February 23, 2006, he attempted to send a letter to the "Commissioner's Office" concerning his confinement at DSP. (Id. at 5). According to Plaintiff, on March 20, 2006, his sister contacted the United States Postal Service to track the letter's progression, but there was no record of the letter. (Id.). Plaintiff submits that, although Defendant Anderson accepted the letter for mailing, she prevented the letter from being delivered. (Id.).

Plaintiff further alleges that TRH provided him with a treatment plan, which included follow-up appointments, restricted use of his shoulder, and utilization of a brace. (See id. at 6). Plaintiff maintains, *inter alia*, that Defendant Gay "went against the Specialist

2

prescribe[d] medical treatment per the instruction of the [h]ospital" and that Defendant Kemp, who is responsible for scheduling "outside appointments," did not schedule a follow-up examination for seven weeks. (Id. at 6 & 8). Plaintiff concludes that, while he was incarcerated at DSP, he underwent several surgical operations on his right shoulder because "treatment [p]lans was [sic] not followed." (Id. at 8).

Plaintiff next alleges that, although he sent letters to Defendants Jarriel and Sanders, who "handles complaints of inmates," concerning his medical treatment, Defendant Sanders never responded. (Id.). Plaintiff maintains that Defendant Jarriel forwarded his letter to Defendant McNeal, who met with Defendant Kemp and Plaintiff concerning his medical treatment. (Id. at 7). Plaintiff submits that, during the meeting with Defendant McNeal, he was verbally assaulted and that, after he complained about his medical treatment, Defendant McNeal confined him in administrative segregation for seven days. (See id. at 7 & 11).

Finally, Plaintiff alleges that he attempted to send another letter to the "Commissioner's Office." (Id. at 7). Plaintiff contends that, rather than mailing the letter, Defendant Anderson forwarded it to the prison administration. (Id.). Plaintiff requests an unspecified amount of compensatory and punitive damages, as well as "other such relief as it appear[s] that [he] may be entitled." (Id. at 11-12).

## II. DISCUSSION

### A. Official Capacity Claims

Plaintiff has attempted to sue all Defendants in their respective official and individual capacities for monetary damages. However, the Eleventh Amendment bars official capacity claims against state prison officials for monetary damages. Kentucky v. Graham, 473 U.S.

159, 169 (1985). In this case, Plaintiff's allegations relate to actions undertaken by Defendants while performing functions as state prison officials. Therefore, Plaintiff's official capacity claims for monetary damages are not cognizable and should be dismissed.

## B.    Grievance and Letter Claims

To the extent Plaintiff may be claiming that Defendants Jarriel and Sanders should be held liable for failing to properly handle his grievances or letters in accordance with Georgia Department of Corrections ("GDC") or DSP procedures, such allegations fail to state a claim upon which relief can be granted. "Procedural requirements alone do not create a substantive liberty interest, and mere violation of such procedures is not a constitutional violation." Rienholtz v. Campbell, 64 F. Supp.2d 721, 731 (W.D. Tenn. 1999), *aff'd*, 198 F.3d 247 (6th Cir. 1999) (Table); see also Massey v. Helman, 259 F.3d 641, 647 (7th Cir. 2001) ("[T]he existence of a prison grievance procedure confers no liberty interest on a prisoner. . . . A state-created prison grievance procedure is simply a procedural right and does not confer any substantive right upon an inmate."); Adams v. Rice, 40 F.3d 72, 75 (4th Cir. 1994) ("[T]he Constitution creates no entitlement to grievance procedures or access to any such procedure voluntarily established by a state."); Ouzts v. Cummins, 825 F.2d 1276, 1278 (8th Cir. 1987) (failure to respond to grievance does not constitute a due process violation); Azeez v. DeRobertis, 568 F. Supp. 8, 10 (N.D. Ill. 1982) (failure to process plaintiff's grievances is not actionable under § 1983).

The Eleventh Circuit's decision in Wildberger v. Bracknell, 869 F.2d 1467 (11th Cir. 1989) (*per curiam*) is instructive on this point. In that case, the plaintiff alleged numerous claims, including a violation of "the grievance procedures established by the State Department of Corrections." Id. at 1467. Addressing the plaintiff's claims, the magistrate judge determined that the "violation of the grievance procedure did not rise to the level of a constitutional violation, since there was no entitlement to a grievance procedure under the Federal Constitution." Id. In the end, the magistrate judge determined that none of the plaintiff's claims had merit. Id. at 1468. Although the Eleventh Circuit found error with the trial court's analysis of one of the plaintiff's retaliation claims, it found no error with the trial court's adoption of the magistrate judge's recommendation regarding the plaintiff's grievance claim. Id.

In this case, Plaintiff alleges that he filed several grievances concerning his medical treatment at DSP, which were denied due to a lack of proof. (Doc. no. 1, p. 6). Plaintiff also complains that he sent letters to Defendants Sanders and Jarriel complaining about his medical treatment at DSP, but that Defendant Sanders never responded and that Defendant Jarriel merely forwarded his letter to Defendant McNeal for consideration. (Id. at 6-7). However, alleged misdeeds regarding grievance procedures do not give rise to stand-alone claims under § 1983. See Buckley v. Barlow, 997 F.2d 494, 495 (8th Cir. 1993) (*per curiam*). "There is no right to a particular type of process in the handling of prison grievances.... [F]ederal courts simply do not sit as the ultimate appellate tribunal for prison grievance procedures." Rienholtz, 64 F. Supp.2d at 731. Similarly, "§ 1983 merely provides a mechanism for enforcing individual rights 'secured' elsewhere, i.e., rights independently

5

'secured by the *Constitution and laws* ' *of the United States*," and thus, allegations concerning the handling of Plaintiff's letters or grievances in accordance with GDC or DSP procedures are not actionable under § 1983. Gonzaga Univ. v. Doe, 536 U.S. 273, 285 (2002) (emphasis added). Therefore, to the extent Plaintiff may be claiming that Defendants Jarriel and Sanders should be held liable for failing to properly handle his grievances or letters in accordance with GDC or DSP procedures, such allegations fail to state a claim upon which relief can be granted.

### C. Deliberate Indifference Claim Against Defendant Gay

Plaintiff's claim concerning Defendant Gay's alleged deliberate indifference to his serious medical needs also fails to state a claim up which relief may be granted. First, it should be noted that Plaintiff merely submits the conclusory allegation that Defendant Gay failed to follow the treatment plan prescribed at TRH. (Doc. no. 1, p. 8). In this regard, Plaintiff fails to allege whether Defendant Gay knew about the treatment plan or to proffer any facts describing how Defendant Gay failed to follow the treatment plan. "Section 1983 requires proof of an affirmative causal connection between the actions taken by a particular person under color of state law and the constitutional deprivation." LaMarca v. Turner, 995 F.2d 1526, 1538 (11th Cir. 1993) (internal quotation marks and citations omitted); see also Crawford-El v. Britton, 523 U.S. 574, (1998) (noting that plaintiffs must "put forward specific, nonconclusory factual allegations that establish improper motive causing cognizable injury"). In the absence of an allegation of any such connection between Defendant Gay with the alleged unconstitutional deprivation, Plaintiff fails to state a deliberate indifference claim against Defendant Gay upon which relief may be granted.

6

Nevertheless, assuming Plaintiff had established a connection between Defendant Gay and the alleged constitutional violation, his deliberate indifference claim against Defendant Gay must still fail. Although it is true that "[t]he Eighth Amendment's proscription of cruel and unusual punishments prohibits prison officials from exhibiting deliberate indifference to prisoners' serious medical needs," Campbell v. Sikes, 169 F.3d 1353, 1363 (11th Cir. 1999), to support a claim for deliberate indifference to a serious medical need, Plaintiff must meet a two-prong test. First, the alleged medical problem must be "sufficiently serious" based on an objective standard; second, the defendant must have subjectively acted with "deliberate indifference" to the inmate's health or well-being. Farmer v. Brennan, 511 U.S. 825, 834 (1994). To state the proposition differently, Eighth Amendment liability cannot be based on simple negligence or lack of due care, but rather requires some sort of conscious disregard of a serious and imminent risk. Id. at 835-39.

To make a valid deliberate indifference claim under the Eighth Amendment concerning his medical treatment, Plaintiff must allege that prison officials knew about and disregarded an excessive risk to his health or safety; officials "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and [they] must also draw the inference." Id. at 837. When subjectively weighing whether prison officials are deliberately indifferent, plaintiffs must establish "more than mere negligence," and courts look for "obduracy and wantonness, not inadvertence or error in good faith." Adams v. Poag, 61 F.3d 1537, 1543 (11th Cir. 1995) (citation omitted). Plaintiff must show that Defendant Gay acted with "deliberate indifference" to his medical needs, such as an intentional refusal to provide care, cursory care in light of a severe medical

7

risk, or a delay in access to care that is essentially a wanton infliction of pain. See id. at 1543-44. Only when medical care is "'so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness'" will the standard of "deliberate indifference" be satisfied. Id. at 1544 (quoting Rogers v. Evans, 792 F.2d 1052, 1058 (11th Cir. 1986)). Mere allegations of negligence or malpractice do not amount to deliberate indifference. Harris v. Thigpen, 941 F.2d 1495, 1505 (11th Cir. 1991).

In this case, Plaintiff merely alleges in a conclusory fashion that Defendant Gay failed to follow the treatment plan prescribed at TRH and that he was forced to undergo several surgical operations because the "treatment [p]lans was [sic] not followed." (Doc. no. 1, p. 8). However, Plaintiff does not allege that Defendant Gay knew about and disregarded an excessive risk to his health, intentionally refused to provide him medical treatment, provided him cursory care in light of a severe medical risk, or delayed access to care. Rather, Plaintiff submits that the treatment he received at DSP differed from the treatment plan prescribed at TRH, and that different treatment plans may only be prescribed by qualified individuals. (Id. at 9). Indeed, differences of opinion concerning treatment plans fall well short of establishing deliberate indifference claims.[2] Harris v. Thigpen, 941 F.2d 1495, 1505 (11th Cir. 1991); Waldrop v. Evans, 871 F.2d 1030, 1033 (11th Cir. 1989). Therefore, Plaintiff's claim concerning Defendant Gay's alleged deliberate indifference to his serious medical needs fails to state a claim up which relief may be granted. As this is the only claim against Defendant Gay, she should be dismissed from the above-captioned case.

---

[2] The Court notes that Plaintiff candidly admits that differences in opinion, between TRH and DSP medical officials, concerning his treatment plan do not constitute deliberate indifference claims. (See doc. no. 1, p. 9).

8

D.  **No Liability Based on *Respondeat Superior***

To the extent Plaintiff blames Defendants Jarriel or Sanders for the alleged constitutional violations of other individuals, such allegations also fail to state claims upon which relief may be granted. "Supervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates on the basis of respondeat superior or vicarious liability." Hartley v. Parnell, 193 F.3d 1263, 1269 (11th Cir. 1999) (internal quotation marks and citation omitted); see also Monell v. Dep't of Soc. Servs., 436 U.S. 658, 691 & 694 n.58 (1978). To hold a supervisory official liable, Plaintiff must demonstrate that either (1) the supervisor actually participated in the alleged constitutional violation, or (2) there is a causal connection between the actions of the supervisor and the alleged constitutional violation. Hartley, 193 F.3d at 1269 (citing Brown v. Crawford, 906 F.2d 667, 671 (11th Cir. 1990)). Here, Plaintiff does not allege that Defendants Jarriel or Sanders participated in the alleged mail tampering, his confinement in administrative segregation, or his medical treatment.[3]

Similarly, Plaintiff fails to allege a "causal connection" between Defendants Jarriel or Sanders and the alleged constitutional violations. See Zatler v. Wainwright, 802 F.2d 397, 401 (11th Cir. 1986) (*per curiam*) (requiring an affirmative causal connection between a defendant and an alleged constitutional violation). The "causal connection" can be

---

[3] On this point, the Court notes that "[s]upervisory officials must rely on their subordinate professionals to make competent medical decisions. As long as supervisory officials have no reason to believe that their subordinates are failing to carry out their duties in a competent manner, they should not be held liable for medical decisions over which they have no direct control." Waldrop v. Evans, 681 F.Supp. 840, 851 (M.D. Ga. 1988).

9

established "when a history of widespread abuse[4] puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he fails to do so," Brown, 906 F.2d at 671, or when "the supervisor's improper 'custom or policy . . . result[s] in deliberate indifference to constitutional rights.'" Hartley, 193 F.3d at 1269 (quoting Rivas v. Freeman, 940 F.2d 1491, 1495 (11th Cir. 1991)). A causal connection may also be shown when the facts support "an inference that the supervisor [or employer] directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so." Cottone v. Jenne, 326 F.3d 1352, 1360 (11th Cir. 2003).

In this case, Plaintiff has not alleged the necessary causal connection, with respect to Defendants Jarriel or Sanders, to hold them liable for the alleged constitutional violations of other individuals. Plaintiff has proffered no facts suggesting that Defendants Jarriel or Sanders were responsible for a custom or policy resulting in mail tampering, affecting his medical treatment, or leading to his confinement in administrative segregation. Although Plaintiff alleges that he filed grievances and that he sent letters to Defendants Sanders and Jarriel, Plaintiff has not alleged that either Defendant knew about any widespread abuses related to mail tampering, confinement of inmates in administrative segregation, or medical treatment of inmates.[5] Simply put, Plaintiff has failed to state a claim against Defendants

---

[4]The standard for demonstrating "widespread abuse" is high. In the Eleventh Circuit, "deprivations that constitute widespread abuse sufficient to notify the supervising official must be *obvious, flagrant, rampant and of continued duration*, rather than isolated occurrences." Brown, 906 F.2d at 671 (emphasis added).

[5]On this point, receipt of a grievance or letter alone does not satisfy the burden of putting a supervisor on notice of a widespread problem. Cf. Crowder v. Lash, 687 F.2d 996, 1005-06 (7th Cir. 1982) (rejecting claim that the Commissioner of the Department of Corrections could be held liable for damages from any constitutional violation at a facility

Jarriel or Sanders based on their respective supervisory positions as Warden or Deputy Warden of Care and Treatment. As these are the only remaining claims against Defendants Jarriel and Sanders, they should also be dismissed from this case.

### III. CONCLUSION

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** that Defendants Gay, Jarriel, and Sanders, as well as all official capacity claims for monetary damages, be **DISMISSED** from this case.[6]

SO REPORTED and RECOMMENDED on this 30th day of May, 2008, at Augusta, Georgia.

W. LEON BARFIELD
UNITED STATES MAGISTRATE JUDGE

---

within his jurisdiction based on receipt of a letter describing allegedly improper prison conditions).

[6] In a simultaneously filed Order, the Court has directed that service of process be effected on Defendants Anderson, Kemp, and McNeal based on Plaintiff's freedom of speech, deliberate indifference, and retaliation claims.